_____

**Case No. 25-10886**

_____

In the United States Court of Appeals
for the Fifth Circuit

_____

CHASITY CONGIOUS, by and through her Guardian, Kimberly Hammond,
on behalf of herself and as Mother and Next Friend of Z.C.H. Deceased,

Plaintiff – Appellant

v.

AARON IVY SHAW, DO,

Defendant – Appellee

_____

On Appeal from the United States District Court
for the Northern District of Texas

_____

**BRIEF OF PLAINTIFF-APPELLANT**

_____

Jarrett Adams, Esq.
LAW OFFICES OF JARRETT ADAMS,
PLLC
40 Fulton St., Floor 15
New York, New York 10038
T: 646.880.9707
F: 646.880.9707
E: JAdams@JarrettAdamsLaw.com

*Attorney for Plaintiff-Appellant*

―――――――

**Case No. 25-10886**

―――――――

In the United States Court of Appeals
for the Fifth Circuit

―――――――

CHASITY CONGIOUS, by and through her Guardian, Kimberly Hammond,
on behalf of herself and as Mother and Next Friend of Z.C.H. Deceased,

Plaintiff – Appellant

v.

AARON IVY SHAW, DO,

Defendant – Appellee

―――――――

On Appeal from the United States District Court
for the Northern District of Texas

―――――――

**CERTIFICATE OF INTERESTED PERSONS**

―――――――

The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the
outcome of this case. These representations are made in order that the Judges of this
Court may evaluate possible disqualification or recusal:

1.     Plaintiff-Appellant Chasity Congious

2.     Kimberly Hammond, mother of Plaintiff-Appellant

i

3.      Counsel for Plaintiff-Appellant Jarrett Adams; The Law Offices of Jarrett Adams, PLLC

4.      Counsel for Plaintiff-Appellant Arielle Comer; Comer Law Group, PLLC

5.      Defendant-Appellee Aaron Ivy Shaw, DO

6.      Counsel for Defendant-Appellee Derek Carson, Jordan Parker, Katherine Hancock, Tierney Bowman; Cantey Hanger LLP

7.      Acclaim Physician Group, Inc., indemnitor of Defendant-Appellee

*/s/ Jarrett Adams*
Jarrett Adams, Esq.
LAW OFFICES OF JARRETT ADAMS, PLLC
40 Fulton St., Floor 15
New York, New York 10038
T: 646.880.9707
F: 646.880.9707
E: JAdams@JarrettAdamsLaw.com

*Attorney for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument because she believes that it would be helpful to the decisional process in this appeal.

# TABLE OF CONTENTS

Certificate of Interested Persons……………………………………………………i

Statement Regarding Oral Argument………………………………………………iii

Table of Contents……………………………………………………………..iv

Table of Authorities…………………………………………………………….vi

Jurisdictional Statement…………………………………………………………1

Statement of Issues……………………………………………………………1

Statement of the Case…………………………………………………………1

Summary of the Argument……………………………………………………5

Argument……………………………………………………………………...6

    I.    The Standard of Review for this Appeal is *De Novo*……………………6

    II.    The District Court Erred By Denying Partial Summary Judgment to Chasity on the Denial of Medical Care Claim…………………………7

        A.    The district court contradicted Fifth Circuit precedent……………7

        B.    The district court used the wrong cases for the denial of medical care claim…………………………………………………...10

        C.    The district court should not have relied upon Dr. Shaw's self-impeaching deposition testimony……………………………..12

        D.    The district court failed to follow Fifth Circuit precedent on the "mailbox rule"…………………………………………………15

        E.    The district court's failure to follow the "mailbox rule" could lead to chaos in the law of email notice………………………16

F.    Dr. Shaw's violation of Chasity and Z.C.H.'s constitutional rights was clearly established……………………………………………...17

III.    The District Court Erred By Denying Partial Summary Judgment to Chasity on the Punitive Damages Claim………………………………..20

Conclusion…………………………………………………………………………...21

Certificate of Compliance with Type-Volume Limit……………………………...22

Certificate of Service………………………………………………………………23

# TABLE OF AUTHORITIES

## Cases

*Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)……………………………………………………………………7, 8, 9, 10

*Dyer v. Houston* 964 F.3d 374 (5th Cir. 2020)………………………………………..10

*Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006)…………………...15, 17, 18, 19

*Ford v. Anderson County, Texas*, 102 F.4th 292, 306 (5th Cir. 2024)………………6

*Gezu v. Charter Communications*, 17 F.4th 547, 553-54 (5th Cir. 2021)….15, 16, 17

*Goebert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006)……………………………..10, 11

*Hare v. City Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)……………………11

*Johnson v. Treen*, 759 F.2d 1236, 1237-38 (5th Cir. 1985)……………………20, 21

*Krohn v. Spectrum Gulf Coast, LLC*, No. 3:18-CV-2722-S, 2019 WL 4572833, *3 (N.D. Tex. Sept. 19, 2019)………………………………………………………..16, 17

*Nart v. Open Text Corp.*, No. A-10-CV-870-LY-AWA, 2013 WL 442009, *2, n.4 (W. D. Tex. Feb. 5, 2013)………………………………………………………...16, 17

*Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022)……..14

*Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003)…………….20, 21

## Statutes

28 U.S.C. § 1291…………………………………………………………………1

28 U.S.C. § 1331…………………………………………………………………1

28 U.S.C. § 1343…………………………………………………………………1

Fed. R. Civ. P. 5(b)(2)(E)…………………………………………………………16

Fed. R. Civ. P. 60(b)(2)……………………………………………………………..4

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Texas has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. On July 1, 2025, the district court entered a final judgment in favor of Defendant-Appellee Aaron Ivy Shaw, DO ("Dr. Shaw") and against Plaintiff-Appellant Chasity Congious ("Chasity"). (ROA.2172). Chasity timely filed a notice of appeal on July 29, 2025. (ROA.2173). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      Whether the district court erred when it denied partial summary judgment in favor Chasity and her baby Z.C.H. on their Fourteenth Amendment denial of medical care claim when the indisputable facts showed Dr. Shaw's clearly established deliberate indifference to their serious medical needs.

2.      Whether the district court erred when it denied partial summary judgment in favor of Chasity and Z.C.H. on their claim for punitive damages when the indisputable facts showed Dr. Shaw's reckless indifference to their medical needs.

## STATEMENT OF THE CASE

Chasity delivered her baby Z.C.H. in a jail cell alone without any medical assistance. Z.C.H. remained trapped in Chasity's pant leg and suffocated to death.

This suffering and loss of life occurred because of the reckless of conduct of Dr. Shaw – who took no action despite being the only prison official who knew that Chasity had abdominal pain prior to delivering Z.C.H. and may not understand that she was in labor. If this horrifying event does not meet the standard for a Fourteenth Amendment denial of medical care claim, then nothing does.

## Statement of Relevant Facts

Chasity was a pretrial detainee at the Tarrant County Jail ("TCJ") during May 13-17, 2020. (ROA.1358-1362). At that time, Dr. Shaw was the medical director at the TCJ. (ROA.1269-1270). Dr. Shaw admits that he was responsible for the medical care of Chasity at the TCJ. (ROA.1305).

On May 13, 2020, Melanie Carter, M.D. ("Dr. Carter") conducted an examination of Chasity. (ROA.1363-1392). Chasity was 37 weeks pregnant at the time of Dr. Carter's examination – meaning that Chasity could deliver her baby at any time – as Dr. Shaw has acknowledged. (ROA.1286; ROA.1367). During the examination, Dr. Carter noted Chasity's history of appearing "intellectually delayed," being "limited in her responses," and not having "a good understanding of her medical history." (ROA.1365). Dr. Carter assessed Chasity with intellectual disability. (ROA.1367).

As part of the May 13, 2020 examination, Dr. Carter recommended that Chasity have an induced labor because she was "**unable to express her symptoms**

**and may not recognize when she goes into labor.**" (ROA.1368) (emphasis in original). On May 15, 2020, Dr. Shaw reviewed the notes and findings from Dr. Carter's examination of Chasity. (ROA.1364-1365; ROA.1307-1308).

Dr. Shaw admits that he knew prior to Chasity going to labor on May 17, 2020 that she: (1) was a poor communicator at the end of her pregnancy; (2) would be unable to communicate if she was having a contraction; and (3) was not able to express her symptoms and may not recognize when she was in labor. (ROA.1294; ROA.1285; ROA.1307-1308). Yet after reviewing Dr. Carter's notes on May 15, 2020, Dr. Shaw did not inform anyone at the TCJ that Chasity would not be able to realize or communicate when she was in labor. (ROA.1292-1295).

On May 17, 2020 at 7:29:19 AM, Dr. Shaw received an email stating that Chasity had refused breakfast and was complaining of abdominal pain. (ROA.1393; ROA.1395). Dr. Shaw admits that he received the email. (ROA.1314). Nevertheless, Dr. Shaw did nothing even though he was the only TCJ prison official who knew that Chasity was complaining of abdominal pain and might not recognize that she was in labor. (ROA.1414-1415).

Because Dr. Shaw did nothing in response to the email and no other TCJ prison official knew that Chasity's complaint of abdominal pain could be labor pain, Chasity delivered Z.C.H. by herself in a jail cell on May 17, 2020. (ROA.2168-2170). Z.C.H. was stuck in Chasity's pants until she was discovered at

9:05 AM. (ROA.1414-1415). Z.C.H. was baptized, and she died ten days later due to the lack of oxygen after being born and not receiving immediate medical attention. (ROA.1415; ROA.1053-1058).

### Relevant Procedural History

Chasity commenced this action against Dr. Shaw with an amended complaint filed on May 11, 2022. (ROA.379-415). In Count IV, Chasity alleged a Fourteenth Amendment denial of medical care claim against Dr. Shaw. (ROA.410-411).

Dr. Shaw filed a motion to dismiss on June 6, 2022. (ROA.562-579). On March 31, 2023, the district court granted Dr. Shaw's motion to dismiss. (ROA.752-785). The district court entered final judgment in Dr. Shaw's favor on April 3, 2023.

On April 2, 2024, Chasity timely filed a Federal Rule of Civil Procedure 60(b)(2) motion for relief from the final judgment in favor of Dr. Shaw. (ROA.1034-1036). Chasity brought the motion due to the recent discovery of the May 17, 2020 email notifying Dr. Shaw that Chasity was complaining of abdominal pain prior to delivering Z.C.H. (ROA.1038-1044).

The district court granted Chasity's motion for relief from the final judgment in favor of Dr. Shaw on July 16, 2024. (ROA.1096-1114). Chasity then filed the

second amended complaint, realleging the Fourteenth Amendment denial of medical care claim against Dr. Shaw. (ROA.1115-1132).

Following the close of discovery, Chasity moved for partial summary judgment on the Fourteenth Amendment denial of medical care claim and the punitive damages claim against Dr. Shaw. (ROA.1243-1429). Dr. Shaw also moved for summary judgment. (ROA.1497-1664). On July 1, 2025, the district court denied Chasity's motions for partial summary judgment, granted summary judgment to Dr. Shaw, and entered final judgment in favor of Dr. Shaw. (ROA.2159-2172). This appeal follows. (ROA.2173-2174).

## SUMMARY OF THE ARGUMENT

For this *de novo* review, Chasity asks this Court to reverse the district court's wrong decision to deny her motion for partial summary judgment on the Fourteenth Amendment denial of medical care claim against Dr. Shaw. The district court's decision contradicts clearly established Fifth Circuit precedent – which shows that Dr. Shaw is liable for his reckless conduct of: (1) not informing any TCJ official after learning on May 15, 2020 that Chasity might not know when she was in labor and (2) taking no action after receiving the May 17, 2020 email informing him of Chasity's abdominal pain. Because of Dr. Shaw's recklessness, Chasity delivered her baby Z.C.H. alone in a jail cell and Z..C.H. died ten days later.

Instead of doing the right thing and granting Chasity's motion for partial summary judgment, the district court granted Dr. Shaw summary judgment on the denial of medical care claim. The district court's decision is riddled with errors, which include: (1) not following Fifth Circuit precedent; (2) using inapplicable case law; (3) improperly relying upon Dr. Shaw's self-impeaching deposition testimony; (4) misconstruing the doctrine of qualified immunity; and (5) not applying the well-established "mailbox rule."

The district court also improperly denied Chasity's motion for partial summary judgment on liability for the punitive damages claim against Dr. Shaw. The indisputable facts of Dr. Shaw's reckless and wanton conduct which demonstrate his liability for the denial of medical care to Chasity and Z.C.H. also establish his liability for an award of punitive damages.

## ARGUMENT

### I.    The Standard of Review for this Appeal is *De Novo*.

Before this Court is an appeal is from the district court's decision denying partial summary judgment to Chasity and granting summary judgment to Dr. Shaw. (ROA.2159-2174). This Court reviews the district court's decision *de novo*. *See Ford v. Anderson County, Texas*, 102 F.4th 292, 306 (5th Cir. 2024) (recognizing the *de novo* standard of review for summary judgment decisions).

**II.    The District Court Erred By Denying Partial Summary Judgment to Chasity on the Denial of Medical Care Claim.**

**A.    The district court contradicted Fifth Circuit precedent.**

When granting Chasity's motion for relief from judgment, the district court followed Fifth Circuit precedent to correctly identify the elements of a Fourteenth Amendment denial of medical care claim. To prevail, "a plaintiff 'must show that the officials refused to treat h[er], ignored h[er] complaints, intentionally treated h[er] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" (ROA.1110) (quoting *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

Properly applying *Domino*, the district court granted Chasity's motion for relief from judgment because the newly-discovered May 17, 2020 email informing Dr. Shaw of Chasity's abdominal cramps was sufficient to state a denial of medical care claim. (ROA.1110-1111). The district court specifically found:

> Taking the new evidence as true, as the Court would do at the motion-to-dismiss stage, the reasonable inference to draw is that Dr. Shaw ignored Congious's complaint of abdominal pain. Given that Dr. Shaw also knew Congious was largely nonverbal, cognitively delayed, and psychologically fragile such that she may not recognize what a contraction is or when labor starts, this new evidence, taken as true, reveals that Dr. Shaw either "refused to treat" Congious, "intentionally treated h[er] incorrectly," or engaged in a  manner tantamount to a "wanton disregard for [her] serious medical needs.

(ROA.1110-1111 (citing *Domino*, 239 F.3d at 756). In fact, the district court further acknowledged that "[t]he new evidence reveals conduct by Dr. Shaw of a <u>far more wanton nature</u>." (ROA.1111) (emphasis added).

Facts obtained in discovery from Dr. Shaw confirm the district court's decision to grant relief from judgment. As the TCJ medical director and Chasity's attending physician, Dr. Shaw on May 15, 2020 read and reviewed the medical records from Dr. Carter's May 13, 2020 examination of Chasity. (ROA.1269-1270; ROA.1358-1362; ROA.1364-1365; ROA.1307-1308). Dr. Shaw therefore <u>knew</u> about Chasity's history of appearing intellectually delayed, being limited in her responses, and not having a good understanding of her medical history. (ROA.1364-1365; ROA.1307-1308).

Dr. Shaw also <u>knew</u> about Dr. Carter's recommendation for Chasity to have an induced labor because she was "**unable to express her symptoms and may not recognize when she goes into labor**." (ROA.1368) (emphasis in original). Dr. Shaw further admits that he <u>knew</u> Chasity was a poor communicator at the end of her pregnancy, was unable to communicate if she was having a contraction, could not express her symptoms, and might not understand when she was in labor. (ROA.1294; ROA.1285; ROA.1307-1308). And Dr. Shaw <u>knew</u> that Chasity was 37 weeks pregnant at the time of Dr. Carter's examination and could deliver her

baby at any time. (ROA.1286; ROA.1367). Startlingly, Dr. Shaw shared his knowledge about Chasity with no one at the TCJ. (ROA.1292-1295).

In other words, Dr. Shaw was the only TCJ prison official who <u>knew</u> prior to the delivery of Z.C.H. that Chasity was an extremely vulnerable jail inmate who could go into labor any minute but may not realize it. Even being the sole person with this knowledge, Dr. Shaw decided to ignore the May 17, 2020 email informing him that Chasity was complaining of abdominal pain. (ROA.1393; ROA.1395; ROA.1314; ROA.1414-1415). As a result, Chasity delivered Z.C.H. alone in a jail cell without any medical assistance, and Z.C.H. died ten days later. (ROA.1414-1415; ROA.1053-1058).

The disturbing facts set forth above are indisputable. It therefore is established as a matter of law that Dr. Shaw was a TCJ prison official who ignored Chasity's complaint of abdominal pain and engaged in conduct showing a wanton disregard for Chasity and Z.C.H.'s serious medical needs. Thus, Dr. Shaw is liable on partial summary judgment for the denial of medical care to Chasity and Z.C.H. *See Domino*, 239 F.3d at 756.

For some unknown reason, the district court on summary judgment abandoned the correct *Domino* analysis from when it granted Chasity's motion for relief from judgment. Instead, the district court misapplied the law when it denied Chasity's summary judgment motion – as will be explained below.

9

**B.**    **The district court used the wrong cases for the denial of medical care claim.**

Instead of evaluating the facts under the appropriate "ignored the complaint" standard set forth in *Domino*, the district court decided summary judgment by applying the "drew the inference" standard in *Dyer v. Houston* 964 F.3d 374 (5th Cir. 2020) and the "disregarded the risk" standard in *Goebert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006). (ROA.2167-2169). Neither case supports granting summary judgment to Dr. Shaw.

The facts supporting the *Dyer* decision do not apply here. In *Dyer*, the Fifth Circuit considered the claim of an arrestee who brought a denial of medical care claim against paramedics based upon an alleged failure to provide additional medical care in response to a head injury and drug-induced behavior. 964 F.3d at 380-81. Rejecting the arrestee's claim, the Fifth Circuit determined that the allegations were at best negligence or a disagreement with treatment. *Id.* This case is not about negligence or a treatment disagreement – it is about the disgrace of <u>zero</u> medical assistance for a helpless jail inmate and baby.

Moreover, the "drew the inference" standard as discussed in *Dyer* does not pertain to this case. There were no inferences for Dr. Shaw to draw. Dr. Shaw had specific knowledge – not inferences – that Chasity was a defenseless jail inmate who was complaining of abdominal pain prior to delivering her baby, yet he took no action.

The facts of the *Gobert* case also are distinguishable. In *Goebert*, the Fifth Circuit addressed a prisoner's Eighth Amendment denial of medical care claim for insufficient medical treatment of his leg injury. 463 F.3d at 344-52. Relying upon an extensive record of medical treatment where there may have been at most negligence, the Fifth Circuit did not find the denial of medical care required for an Eighth Amendment cruel and unusual punishment claim. *Id.* at 351-52. By contrast, Chasity as a pretrial detainee cannot be punished. *See Hare v. City Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (acknowledging that the state cannot punish pretrial detainees). And this case is not about possible negligence in the context of an extensive treatment record. Instead, this case is about the total absence of medical treatment when Chasity delivered Z.C.H. alone in a jail cell.

Furthermore, the "disregarded the risk" standard as described in *Gobert* shows that Chasity is entitled to partial summary judgment against Dr. Shaw. Certainly Dr. Shaw disregarded the risk to Chasity and Z.C.H when he failed to inform any TCJ official when he learned on May 15, 2020 that Chasity may not understand when she was in labor. Dr. Shaw also undoubtedly disregarded the risk to Chasity and Z.C.H. when he ignored the May 17, 2020 email about Chasity's abdominal pain prior to delivering Z.C.H. Dr. Shaw therefore should be liable for his denial of medical care to Chasity and Z.C.H.

**C.    The district court should not have relied upon Dr. Shaw's self-impeaching deposition testimony.**

To give summary judgment to Dr. Shaw, the district court solely relied upon Dr. Shaw's claim at his deposition that he did not see the May 17, 2020 email informing him of Chasity's complaint of abdominal pain prior to Chasity delivering Z.C.H. (ROA.2167-2169). Reliance upon Dr. Shaw's claim was a mistake.

The district court asserted that Chasity "does not dispute" Dr. Shaw's deposition testimony about not seeing the May 17, 2020 email – because Chasity stated that there was no genuine dispute as to the material facts. (ROA.2168). The district court's assertion is incorrect. In her motion for partial summary judgment, Chasity presented the district court with an indisputable statement of facts establishing Dr. Shaw's denial of medical care. (ROA.1249-1251). There is <u>nothing</u> in the statement of facts about Dr. Shaw's claim of not seeing the May 17, 2020 email until after Chasity delivered Z.C.H. – because it is immaterial to Chasity's motion for partial summary judgment. (ROA.1249-1251). By contrast, Chasity absolutely disputed Dr. Shaw's claim about not seeing the May 17, 2020 in her response to his motion for summary judgment (ROA.1669-1670) – as will be set forth below:

Counsel for Chasity asked Dr. Shaw at his deposition whether he recalled the specifics about Chasity while she was at the TCJ. (ROA.1277). Dr. Shaw

responded: "I <u>don't recall</u> anything specifically, no." (ROA.1277). Chasity's counsel also specifically asked Dr. Shaw when he opened the May 17, 2020 email about Chasity's abdominal pain. (ROA.1314). Dr. Shaw responded: "I <u>don't know</u> when I opened it up." (ROA.1314). So in response to clear and direct questions, Dr. Shaw testified under oath that he remembered nothing specific about Chasity at the TCJ and did not know when he saw the May 17, 2020 email.

After Chasity's counsel completed his questioning, Dr. Shaw and his counsel made an obvious attempt to fix his damaging deposition testimony. The maneuver was transparent because Dr. Shaw's counsel premised a deposition question to his client with the argumentative statement: "You said under oath to Mr. Adams [counsel for Chasity] that you didn't know when you opened the [May 17, 2020] email. My question is different." (ROA.1333). Dr. Shaw's counsel then asked the question: "Do you know whether you opened it before the baby was discovered in the cell at approximately 9:00 a.m.?" (ROA.1333). In direct contradiction of his prior sworn testimony about not recalling anything specific about Chasity and not knowing when he saw the email, Dr. Shaw answered: "I know for a fact I did not open it before I got a call about the baby being delivered." (ROA.1334). Chasity's counsel followed up to ask whether Dr. Shaw had any proof – other than his claim – that he did not open the May 17, 2020 email until after Chasity delivered her baby. (ROA.1339). Dr. Shaw stammered in response: "I don't – I don't – I don't

have any proof otherwise." (ROA.1339). Thus, Dr. Shaw without explanation

impeached his prior sworn testimony about not recalling or knowing anything

about Chasity and Z.C.H. – by claiming that he knew when he opened the May 17,

2020 email and claiming that he knew when he got a call about Chasity delivering

Z.C.H. (ROA.1334).

The district court when granting summary judgment to Dr. Shaw did not

address the self-impeachment in Dr. Shaw's deposition testimony. (ROA.2168).

Rather, the district court just accepted Dr. Shaw's claim that he did not see the May

17, 2020 email until after Chasity delivered Z.C.H. because Dr. Shaw "testified to

this fact." (ROA.2168). What the district court should have done was reject Dr.

Shaw's claim of not seeing the email because it impeached – without explanation –

by his prior sworn testimony. *See Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th

472, 477 (5th Cir. 2022) (explaining the ""sham-affidavit doctrine"" where an

affidavit cannot be used to defeat summary judgment when it "'impeaches, without

explanation, sworn testimony.'") (quotation omitted). The fact that Dr. Shaw's self-

impeachment occurred in later in his deposition [not an affidavit] and that the

district court used the self-impeachment to grant [not deny] summary judgment

should not matter. Deciding summary judgment on self-impeachment evidence that

contradicts prior sworn testimony – as the district court did here – was wrong. *See*

*id.*

**D.    The district court failed to follow Fifth Circuit precedent on the "mailbox rule."**

The district court rejected the well-established "mailbox rule" for Dr. Shaw's undisputed receipt of the May 17, 2020 email notifying him of Chasity's abdominal pain. (ROA.2168-2170). Making a reversible error, the district court decided that the "mailbox rule" was not clearly established for qualified immunity purposes in the context of a denial of medical care claim. (ROA.2168-2170).

To begin with, the "mailbox rule" has nothing to do with qualified immunity. The "mailbox rule" provides that the recipient of a document sent by email has notice of the document. For example, in *Gezu v. Charter Communications*, the Fifth Circuit applied the "mailbox rule" to hold that the plaintiff had notice of an arbitration agreement sent by email even though the plaintiff claimed not to have read the email. 17 F.4th 547, 553-54 (5th Cir. 2021). By contrast, the clearly-established element of qualified immunity applies to whether "the defendant's conduct was objectively reasonable in light of clearly established law." *Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006). The district court therefore should not have viewed the "mailbox rule" through the lens of qualified immunity. *See id.* Instead, the district court should have applied Fifth Circuit precedent on the "mailbox rule" to hold that Dr. Shaw had notice of Chasity's abdominal pain by his undisputed receipt of the May 17, 2020 email – regardless of Dr. Shaw's claim not to have seen the email. *See Gezu*, 17 F.4th at 553-54.

**E.    The district court's failure to follow the "mailbox rule" could lead to chaos in the law of email notice.**

By mistakenly considering the "mailbox rule" using the law of qualified immunity, the district court further erred in trying to distinguish Fifth Circuit precedent. The district court stated that the controlling decision in *Gezu* and the district court decisions in *Krohn v. Spectrum Gulf Coast, LLC*, No. 3:18-CV-2722-S, 2019 WL 4572833, *3 (N.D. Tex. Sept. 19, 2019) and *Nart v. Open Text Corp.*, No. A-10-CV-870-LY-AWA, 2013 WL 442009, *2, n.4 (W. D. Tex. Feb. 5, 2013) are "too dissimilar" to this case to apply the "mailbox rule." (ROA.2170). According to the district court, the prior cases using the "mailbox rule" for arbitration agreements and a deposition transcript did not pertain this case about "doctors receiving charts." (ROA.2170).

Sending documents by email is common in every aspect of life – personal matters, business, government, and <u>medical care</u>. Federal Rule of Civil Procedure 5(b)(2)(E) permits the service of documents via email. This brief is submitted to this Court and served upon Dr. Shaw electronically. If notice of a document sent via email depends upon things like the subject matter of the document and/or the email recipient's occupation – as the district court found here – then there will be a ton of litigation. Any email recipient could try the "I did not see it" excuse to avoid notice of a document sent via email. And Fifth Circuit courts will face the

seemingly impossible task of deciding which emails provide notice of documents and which do not.

There is no need for such a mess to happen. This Court should hold that the "mailbox rule" applies in all circumstances. Email receipt of a document equals notice of the document, regardless of the recipient's claim of not seeing the email. As a result, Dr. Shaw's undisputed receipt of the May 17, 2020 email (ROA.1314) means that Dr. Shaw had notice of Chasity's complaint of abdominal pain prior to delivering Z.C.H. *See Gezu*, 17 F.4th at 553-54; *Krohn*, 2019 WL 4572833, *3; *Nart*, 2013 WL 442009, *2, n.4.

### F.     Dr. Shaw's violation of Chasity and Z.C.H.'s constitutional rights was clearly established.

The district court when granting Chasity's motion for relief from judgment properly relied upon Fifth Circuit precent in *Easter* to find that Dr. Shaw's violation of Chasity and Z.C.H.'s right to medical care was clearly established. (ROA.1111-1112). Specifically, the district court found that discovery of the May 17, 2020 email meant that Dr. Shaw "'turned a deaf ear'" to Chasity's complaint of abdominal pain. (ROA.1111-1112) (quoting *Easter*, 467 F.3d at 463-64). Rejecting Dr. Shaw's attempt to distinguish *Easter* because it involved in-person rather than email communication, the district court correctly concluded that the method of conveying the complaint is irrelevant. (ROA.1112).

Nothing in the law changed during the year between the district court granting Chasity's motion for relief from judgment in July 2024 (ROA.1096-1114) and the district court denying Chasity's motion for partial summary judgment in July 2025 (ROA2159-2171). What changed is that the district court wrongly applied qualified immunity law to the "mailbox rule" and incorrectly relied upon Dr. Shaw's unsupported and self-impeaching claim of not seeing the May 17, 2020 email about Chasity's abdominal pain. (ROA.2167-2170)

The district court got it right the first time. (ROA.1111-1112). Controlling precedent in *Easter* is that ignoring a prisoner's complaint of pain establishes a denial of medical care claim. 467 F.3d at 465. There is nothing in *Easter* even suggesting that the method of communicating the complaint matters. *Id.* at 463-65. Thus, it was clearly established that Dr. Shaw violated Chasity and Z.C.H.'s right to medical care when he ignored Chasity's complaint of abdominal pain – regardless of the complaint being sent via email. *See id.*

As described above, the district court's erroneous decision on the "mailbox rule" – if not reversed – could result in a surge of litigation over email notice. There is further danger from the district court's decision. Dr. Shaw has no factual support for his claim of not seeing the May 17, 2020 email other than his self-impeaching deposition testimony. (ROA.1339). If such an excuse is accepted as a valid defense, then Fourteenth Amendment denial of medical care claims could

become futile. For example, a defendant in a denial of medical care claim for ignoring a complaint made in-person could avoid liability by claiming not to have been listening to the patient. Or a defendant in a denial of medical care claim due to ignoring a complaint made during a remote video appointment could escape liability by claiming not to have been looking at the video screen. This Court should prevent such absurd results, follow the precedent of *Easter*, and hold Dr. Shaw liable without regard to his unsupported and self-impeaching claim of not seeing the email.

In summary, Chasity acknowledges that the deliberate indifference standard for a Fourteenth Amendment denial of medical care claim is a tough standard to meet. Chasity also understands that courts do not want to turn Section 1983 claims into a vehicle for negligence or medical malpractice actions. This case, however, is not about negligence or medical malpractice – such as an allegation that Dr. Shaw made a mistake while assisting Chasity with the delivery of Z.C.H. This case is about a helpless pretrial detainee delivering a baby alone in a jail cell – resulting in unfathomable suffering and death. This case also is about Dr. Shaw's stunning failure to act when he was <u>the only TCJ official</u> who <u>knew</u> that Chasity's abdominal pain on May 17, 2020 could be labor pain <u>and knew</u> that Chasity may not realize she was in labor. If Dr. Shaw's reckless conduct in this case is not

enough for a Fourteenth Amendment denial of medical care claim, then such claims are effectively null and void.

### III.  The District Court Erred By Denying Partial Summary Judgment to Chasity on the Punitive Damages Claim.

Chasity moved for partial summary judgment on the punitive damages claim, because the same indisputable facts establishing Dr. Shaw's liability for the denial of medical care claim also establish his liability for the punitive damages. (ROA.1254-1255). Specifically, Chasity explained how the standard for punitive damages due to the reckless indifference for constitutional rights is the same standard as the reckless and wanton conduct required for a denial of medical care claim. (ROA.1255) (comparing *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) [discussing punitive damages] with *Johnson v. Treen*, 759 F.2d 1236, 1237-38 (5th Cir. 1985) [addressing denial of medical care]. Dr. Shaw responded to the motion on the punitive damages claim by just repeating his arguments against the denial of medical care claim. (ROA.1865). The district court did not mention Chasity's punitive damages claim in its summary judgment decision. (ROA.2159-2171).

As set forth above, the indisputable facts about: (a) Dr. Shaw's reckless conduct of telling no one at the TCJ after learning on May 15, 2020 that Chasity may not understand when she was in labor and (b) Dr. Shaw's reckless act of doing nothing after receiving the May 17, 2020 email about Chasity's abdominal pain

establish his liability as a matter of law for Chasity's Fourteenth Amendment denial of medical care claim. The same reckless conduct demonstrates Dr. Shaw's liability as a matter of law for the punitive damages claim. *See Williams*, 352 F.3d at 1015; *Johnson*, 759 F.2d at 1237-38.

## CONCLUSION

For the reasons set forth above, Chasity respectfully requests that this Court: (1) the reverse the district court's grant of summary judgment in favor of Dr. Shaw; (2) grant partial summary judgment in favor of Chasity and Z.C.H. on liability for the Fourteenth Amendment denial of medical care claim against Dr. Shaw; (3) grant partial summary judgment in favor of Chasity and Z.C.H. on liability for the punitive damages claim against Dr. Shaw; and (4) remand this case to the district court for further proceedings.

Respectfully submitted,

/s/ Jarrett Adams
Jarrett Adams, Esq.
LAW OFFICES OF JARRETT ADAMS, PLLC
40 Fulton St., Floor 15
New York, New York 10038
T: 646.880.9707
F: 646.880.9707
E: JAdams@JarrettAdamsLaw.com
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.      This document complies with the type-volume limit of FED. R. APP.

P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FED.

R. APP. P. 32(f) this document contains 4,704 words.

2.      This document complies with the typeface requirements of FED. R.

APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word Version 16.101.2 in 14-point Times New Roman font.

Date: October 13, 2025

/s/ Jarrett Adams
Jarrett Adams, Esq.
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025 I electronically filed the foregoing pleading with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will automatically serve a true and complete copy upon the following counsel of record:

Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com

Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com

Katherine R. Hancock
State Nar No. 24106048
khancock@canteyhanger.com

Tiereney L. Bowman
State Bar No. 24136751
tbowman@canteyhanger.com

**Cantey Hanger LLP**
600 W. 6th Street, Suite 300
Fort Worth, Texas 76102
Tel. (817) 877-2800

*Attorneys for Defendant-Appellee*

/s/ Jarrett Adams
Jarrett Adams, Esq.
*Attorney for Plaintiff-Appellant*