————————

**Case No. 25-10886**

————————

In the United States Court of Appeals
for the Fifth Circuit

————————

CHASITY CONGIOUS, by and through her Guardian, Kimberly Hammond,
on behalf of herself and as Mother and Next Friend of Z.C.H. Deceased,

Plaintiff – Appellant

v.

AARON IVY SHAW, DO,

Defendant – Appellee

————————

On Appeal from the United States District Court
for the Northern District of Texas

————————

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

————————

Jarrett Adams, Esq.
LAW OFFICES OF JARRETT ADAMS,
PLLC
40 Fulton St., Floor 15
New York, New York 10038
T: 646.880.9707
F: 646.880.9707
E: JAdams@JarrettAdamsLaw.com

*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Contents……………………………………………………………i

Table of Authorities………………………………………………………...ii

Argument……………………………………………………………...1

    I.    This Court Has Jurisdiction Over This Appeal…………………………1

    II.   The Required Inference is that Dr. Shaw Knew About Chasity's Abdominal Pain Prior to the Delivery of Z.C.H…………………………2

    III.  The Mailbox Rule Applies in This Case. …………………………4

    IV.  Dr. Shaw Is Not Entitled to Qualified Immunity…………………………7

    V.   Dr. Shaw Knew of the Risk to Chasity and Z.C.H. Because the Risk Was Obvious…………………………………………………………10

    VI.  Chasity Should Be Entitled to Punitive Damages………………………12

    VII. Any Dispute of Material Fact Requires Reversal of the District Court…..13

Conclusion………………………………………………………...14

Certificate of Compliance with Type-Volume Limit…………………………...15

Certificate of Service……………………………………………………16

# TABLE OF AUTHORITIES

## Cases

*Canales-Berrios v. Barr*, 838 Fed.Appx. 800 (5th Cir. 2020)………………..4, 6, 10

*Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006)………………….....................8, 9, 10

*Faciane v. Sun Life Assurance Company of Canada*, 931 F.3d 412 (5th Cir. 2019)..4

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)………………………………………………………………………...10, 11, 12

*Gamel v. Grant Prideco, L.P.*, 625 Fed.Appx. 690 (5th Cir. 2015)……………...4, 5

*Geico Ins. Co. v. White*, 339 Fed.Appx. 394 (5th Cir. 2009)………………………...5

*Gezu v. Charter Communications*, 17 F.4th 547 (5th Cir. 2021)……………...3, 5, 6

*Medley v. Thaler*, 660 F.3d 833 (5th Cir. 2011)…………………………………….4

*Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994)…………………………………..10

*Reeves v. General Foods Corp.*, 682 F.2d 515 (5th Cir. 1982)………………..2, 3, 4

*Rosenthal v. Walker*, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395 (1884)…….4, 5, 6, 10

*U.S. v. Ekong*, 518 F.3d 285 (5th Cir. 2007)………………………………………...5

## Statutes

28 U.S.C. § 1291…………………………………………………………………1

Fed. R. Civ. P. 3……………………………………………………………………1

Fed. R. Civ. P. 56……………………………………………………………………..13

# ARGUMENT

## I.     This Court Has Jurisdiction Over This Appeal.

Defendant-Appellee Aaron Ivy Shaw, DO ("Dr. Shaw") contends that there is some question whether this Court has jurisdiction over this appeal because Plaintiff-Appellant Chasity Congious ("Chasity") raises issues with the district court's denial of her motion for partial summary judgment. Appellee's Brief at pp.ix-xi. Contrary to Dr. Shaw's ridiculous contention, this Court certainly has jurisdiction over this appeal.

The district court entered a final judgment in favor of Dr. Shaw on July 1, 2025. (ROA.2172). Chasity timely filed her notice of appeal on July 29, 2025. (ROA.2173). A notice of appeal "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order." Fed. R. App. P. 3(c)(4). Accordingly, Chasity's notice of appeal encompasses all the district court's orders included in the final judgment – including the denial of Chasity's motion for partial summary judgment. *See id.* The Court therefore has jurisdiction over this appeal of the district court's denial of Chasity's motion for partial summary judgment as part of the final judgment. *See* 28 U.S.C. § 1291 (stating the courts of appeals have jurisdiction from all final decisions of the district courts).

Furthermore, Chasity's appeal of the district court's decision denying her motion for partial judgment obviously must include an appeal of the decision

granting Dr. Shaw's summary judgment motion – because summary judgment cannot be granted to both sides. Indeed, Chasity's initial brief explained the district court's error of relying upon Dr. Shaw's self-contradictory deposition testimony to grant him summary judgment. Appellant's Initial Brief at pp.12-14. And Chasity's initial brief specifically requested the relief of this Court reversing the summary judgment in favor of Dr. Shaw. *Id.* at p.21. Dr. Shaw's suggestion that this Court lacks jurisdiction over this appeal borders on frivolous.

## II.     The Required Inference is that Dr. Shaw Knew About Chasity's Abdominal Pain Prior to the Delivery of Z.C.H.

Dr. Shaw argues that his denial of seeing or reading the May 17, 2020 email is enough to show that he did not draw any inference about the risk to Chasity and her innocent baby Z.C.H. Appellee's Brief at pp.15-27. This argument directly contradicts controlling precedent about inferences and presumptions.

In *Reeves v. General Foods Corp.*, the Fifth Circuit explained the important difference between permissive inferences and presumptions. 682 F.2d 515, 521, n.9 (5th Cir. 1982). A permissive inference is a conclusion that can be drawn by the trier of fact based upon an assessment of the evidence. *Id.* By contrast, a presumption "is a <u>rule of law</u> which <u>compels</u> the decisionmaker to draw a certain inference from a specified set of facts for a specified purpose . . .." *Id.* (emphasis added). Importantly for purposes of this appeal, an unrebutted presumption is

enough to support a directed verdict [or partial summary judgment] in favor of a plaintiff. *Reeves*, 682 F.2d at 521.

Here, there is an unrebutted presumption that Dr. Shaw received the May 17, 2020 email and therefore knew about Chasity's abdominal pain prior to the birth of Z.C.H. The well-established mailbox rule creates the presumption that Dr. Shaw received the May 17, 2020 email and therefore had notice of the information attached to the email about Chasity's abdominal pain. *See Gezu v. Charter Communications*, 17 F.4th 547, 553-54 (5th Cir. 2021) (holding that the mailbox rule created a rebuttable presumption that the plaintiff received an email and had notice of modifications to an employment contract attached to the email). Leaving aside the self-contradictory nature of Dr. Shaw's deposition testimony, Dr. Shaw's denial of seeing or reading the May 17, 2020 email – without additional evidence – is insufficient to rebut the presumption. *See id.* (holding that the plaintiff's claim of not reading the email was not enough to rebut the presumption).

Thus, there is no permissive inference to draw in this case about what Dr. Shaw knew about Chasity's abdominal pain on May 17, 2020. Instead, there is the unrebutted presumption that Dr. Shaw received the May 17, 2020 email and as a result knew of Chasity's abdominal pain. This unrebutted presumption – and the indisputable fact that Dr. Shaw took no action in response to receiving the May 17,

2020 email – supports granting partial summary judgment in favor of Chasity on the denial of medical care claim. *See Reeves*, 682 F.2d at 521.

### III.    The Mailbox Rule Applies in This Case.

Dr. Shaw tries to avoid the application of the mailbox rule to his receipt of the May 17, 2020 email by making four arguments. Appellee's Brief at pp.28-32. None of Dr. Shaw's arguments have any merit, as explained below.

**First**, Dr. Shaw states that the mailbox rule is a "novel argument" that is based upon "Texas contract law" and pertains to "issues of constructive notice under Texas law." Appellee's Brief at pp.28-29. To begin with, there is nothing novel about the mailbox rule. The United States Supreme Court has recognized the mailbox rule since at least the 19th Century. *Rosenthal v. Walker*, 111 U.S. 185, 193-94, 4 S.Ct. 382, 28 L.Ed. 395 (1884).

In addition, the mailbox rule is not limited to Texas law or to contract law. On the contrary, the mailbox rule has been applied by the Fifth Circuit in numerous circumstances. *See, e.g., Canales-Berrios v. Barr*, 838 Fed.Appx. 800, 803 (5th Cir. 2020) (acknowledging that the mailbox rule applies in "criminal cases, civil cases, and immigration cases"); *Faciane v. Sun Life Assurance Company of Canada*, 931 F.3d 412, 420-21 (5th Cir. 2019) (using the mailbox rule for a letter from an ERISA administrator); *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011) (employing the mailbox rule to a prisoner's habeas corpus petition); *Gamel v. Grant Prideco, L.P.*,

4

625 Fed.Appx. 690, 694 (5th Cir. 2015) (applying the mailbox rule to an EEOC

right-to-sue letter); *Geico Ins. Co. v. White*, 339 Fed.Appx. 394, 396-97 (5th Cir.

2009) (utilizing the mailbox rule for an amendment to an insurance policy under

Mississippi law); and *U.S. v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) (invoking

the mailbox rule for a demand for payment letter).

Indeed, the Supreme Court long ago recognized that the mailbox rule applies

to the receipt of a letter "without regard to the contents of the letter." *Rosenthal*,

111 U.S. at 194. As a result, mailbox rule applies to the May 17, 2020 email to Dr.

Shaw – regardless of the contents of the email. *See id.*

**Second**, Dr. Shaw claims that the mailbox rule only establishes receipt of an

email – nothing more. Appellee's Brief at p.28. This claim contradicts the law and

common sense. For starters, the mailbox rule is a rule of law which creates a

presumption that the recipient received and email <u>and</u> received the materials

attached to the email. *See, e.g., Gezu*, 17 F.4th at 553-54 (holding that the mailbox

rule established that the plaintiff received an email <u>and</u> the employee agreement

modification attached to the email). Moreover, it would make no sense for the

mailbox rule to apply to the receipt of a letter or email – but not to the receipt of its

contents. People do not mail empty envelopes or send blank emails. The plain

reason for mailing a letter or sending an email is to convey information.

Accordingly, the mailbox rule means that an email recipient received an email and

the information contained the email. *Gezu*, 17 F.4th at 553-54. In this case, the

mailbox rule means that Dr. Shaw received the May 17, 2020 email <u>and</u> the

contents of the email – including the report of Chasity's abdominal pain. *See id.*

**Third**, Dr. Shaw contends that the cases applying the mailbox rule are

factually different from this case. Appellee's Brief at p.31. It does not matter

because the Supreme Court has instructed that the mailbox rule applies without

regard to the contents of the letter or email. *See Rosenthal*, 111 U.S. at 194.

Likewise, the Fifth Circuit has announced that the mailbox rule applies in criminal,

civil, and immigration cases. *See Canales-Berrios*, 838 Fed.Appx. at 803.

Moreover, Dr. Shaw's proposal restricting the mailbox rule to only certain

facts or cases not only contradicts controlling precedent – it would lead to a

multitude of litigation over notice. Any letter or email recipient could try avoiding

notice of the contents by claiming not to have seen or read the letter or email. Then

Fifth Circuit courts would face the impractical task of deciding which cases or

facts are subject to the mailbox rule and which are not. This Court should reject Dr.

Shaw's proposal and confirm that the mailbox rules applies in all cases – including

to Dr. Shaw's receipt of the May 17, 2020 email informing him of Chasity's

abdominal pain *See Rosenthal*, 111 U.S. at 194; *Canales-Berrios*, 838 Fed.Appx. at

803.

**Fourth**, Dr. Shaw argues that application of the mailbox rule would lead to absurd results because state officials would be deemed to have knowledge of every email in their inbox. Appellee's Brief at pp.31-32. That is not absurd – that is the mailbox rule. Otherwise, state officials could avoid knowledge of any email simply by claiming not have received or seen the email.

Furthermore, Dr. Shaw was not just some unidentified state official receiving a random email. Dr. Shaw was the medical director of the Tarrant County Jail who was Chasity's attending physician and responsible for her medical care. (ROA.1269-1270; ROA.1305). There should be no doubt that the mailbox applies to an email about a patient's medical condition sent to the doctor responsible for the patient's medical care. The mailbox rule therefore should apply to Dr. Shaw's receipt of the May 17, 2020 email notifying him of Chasity's abdominal pain.

## IV.    Dr. Shaw Is Not Entitled to Qualified Immunity.

Dr. Shaw presents two arguments for his claim to qualified immunity. Appellee's Brief at pp.32-36. Both arguments lack value, as set forth below.

**First**, Dr. Shaw asserts that he satisfied the appropriate standard of care with respect to Chasity and Z.C.H. Appellee's Brief at pp.33-36. The fact that a medical doctor would say that the standard of care was met when Chasity delivered her baby alone in a jail cell and when Z.C.H. suffocated to death should disgust

everyone. Regardless, this is not a negligence case. Dr. Shaw's absurd position on the standard of care therefore is irrelevant.

**Second**, Dr. Shaw contends that there was no clearly established law to put him on notice. Appellee's Brief at p.36. As correctly recognized by the district court when granting Chasity's motion for relief from judgment, Dr. Shaw is incorrect.

In *Easter v. Powell*, the Fifth Circuit discussed the qualified immunity standard for denial of medical care claims:

> When a government official violates a constitutional right, the official is nevertheless entitled to qualified immunity if his or her conduct is objectively reasonable in light of clearly established law. A law is "clearly established" if it is "sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."

467 F.3d 459, 465 (5th Cir. 2006) (footnotes and quotations omitted) (emphasis added). Using this standard, the Fifth Circuit determined that the defendant violated clearly established rights by providing no treatment in response to a plaintiff with cardiac problems who was complaining of chest pains. *Id.*

To grant Chasity's motion for relief from judgment, the district court properly relied upon *Easter* to conclude that Dr. Shaw was on notice of his unconstitutional conduct. (ROA.1111-1112). The district court determined that the May 17, 2020 email meant that Dr. Shaw "'turned a deaf ear'" to Chasity's complaint of abdominal pain. (ROA.1111-1112) (quoting *Easter*, 467 F.3d at 463-64). Importantly, the district court rejected Dr. Shaw's argument that *Easter* did not put him on notice because it involved in-person rather than email communication. (ROA.1112). The district court correctly recognized that there is nothing in *Easter* even suggesting that the method of conveying the complaint matters. (ROA.1112).

For some reason, the district court on summary judgment decided that *Easter* was no longer sufficient to put Dr. Shaw on notice that he could not ignore Chasity's complaint of abdominal pain. (ROA.2170). There was no change in the law between the district court granting Chasity's motion for relief from judgment in July 2024 (ROA.1096-1114) and the district court denying Chasity's motion for partial summary judgment in July 2025 (ROA2159-2171). Instead, the district court wrongly interpreted the law to determine that prior cases involving the mailbox rule were too factually dissimilar to put Dr. Shaw on notice that his conduct was illegal. (ROA.2170). As explained above, it is long-established that the mailbox rules applies to all letters and emails – without regard to their contents. The mailbox rule therefore applies to the May 17, 2020 email informing Dr. Shaw

of Chasity's abdominal pain. *See Rosenthal*, 111 U.S. at 194; *Canales-Berrios*, 838 Fed.Appx. at 803.

The Fifth Circuit in *Easter* made clear that ignoring a prisoner's complaint of pain establishes a denial of medical care claim. 467 F.3d at 465. How the prisoner conveyed the complaint does not matter. *Id.* at 463-65. Dr. Shaw therefore had notice that he violated Chasity and Z.C.H.'s right to medical care when he ignored Chasity's complaint of abdominal pain – regardless of the complaint being sent by the May 17, 2020 email. *See id.*

As presented in Chasity's initial brief, denial of medical care claims could become impossible if Dr. Shaw's unsupported and self-contradictory excuse of not seeing or reading the May 17, 2020 is accepted. (Appellant's Initial Brief at pp.18-19). Dr. Shaw did not respond to this point. (Appellee's Brief at pp.13-36). This Court therefore should save denial of medical care claims and hold Dr. Shaw liable without regard to his dubious claim of not seeing or reading the email. *See Easter*, 467 F.3d at 463-65.

## V.   Dr. Shaw Knew of the Risk to Chasity and Z.C.H. Because the Risk Was Obvious.

The Fifth Circuit has recognized that: "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Farmer v. Brennan*, 511 U.S. 825, 841-42, 114 S.Ct. 1970, 128

L.Ed.2d 811 (1994)). This case presents such exceptional circumstances, as explained below.

Chasity was a pretrial detainee at the Tarrant County Jail ("TCJ") during May 13-17, 2020. (ROA.1358-1362). Z.C.H. was an innocent newborn baby. (ROA.1414-1415). Dr. Shaw was the medical director at the TCJ, who has admitted that he was responsible for the medical care of Chasity [and Z.C.H.] at the TCJ. (ROA.1269-1270; ROA.1305).

Melanie Carter, M.D. ("Dr. Carter") examined Chasity on May 13, 2020. (ROA.1363-1392). At the time, Chasity was 37 weeks pregnant – meaning that Chasity could deliver her baby at any time – as Dr. Shaw also has admitted. (ROA.1286; ROA.1367). Dr. Carter recognized Chasity's history of appearing "intellectually delayed," being "limited in her responses," and not having "a good understanding of her medical history." (ROA.1365). As part of the examination, Dr. Carter assessed Chasity with intellectual disability. (ROA.1367).

Following the May 13, 2020 examination, Dr. Carter recommended that Chasity have an induced labor because she was "**unable to express her symptoms and may not recognize when she goes into labor.**" (ROA.1368) (emphasis in original). There should be no question that Chasity possibly going to labor at any time and not realizing it presented an obvious substantial risk of serious harm to Chasity and Z.C.H. On May 15, 2020, Dr. Shaw reviewed the notes and findings

from Dr. Carter's examination of Chasity. (ROA.1364-1365; ROA.1307-1308). Dr. Shaw therefore knew of the obvious substantial risk of serious harm to Chasity and Z.C.H. from the fact that Chasity may go into labor at any time but might not recognize it. (ROA.1364-1365; ROA.1307-1308).

Even with the knowledge of the obvious substantial risk of serious harm to Chasity and Z.C.H., Dr. Shaw took no action after reviewing Dr. Carter's notes and findings. Significantly, Dr. Shaw did not inform anyone at the TCJ that Chasity would not be able to realize or communicate when she was in labor. (ROA.1295). This fact should nullify Dr. Shaw's pathetic defense that some unidentified person from the TCJ should have called him on May 17, 2020 about Chasity's abdominal pain. Appellee's Brief at p.34. No one from the TCJ called because they did not know – as Dr. Shaw did – that Chasity could be in labor and not know it. (ROA.1295). Thus, Dr. Shaw failed to act despite knowing of the obvious substantial risk of serious harm to Chasity and Z.C.H. – meaning that Dr. Shaw should be liable for his denial of medical care to Chasity and Z.C.H. *See Farmer*, 511 U.S. at 841-42.

## VI.    Chasity Should Be Entitled to Punitive Damages.

Dr. Shaw argues that Chasity should not receive partial summary judgment on liability for the punitive damages claim because she is not entitled to partial summary judgment on liability for the denial of medical care claim. Appellee's

Brief at p.37. In his argument, Dr. Shaw did not respond to the fact that the reckless standard for punitive damages is the same standard for deliberate indifference. Appellee's Brief at p.37.

As discussed in Chasity's initial brief, the same facts which show Dr. Shaw's reckless conduct and his liability for the denial of medical care claim also establish his liability for the punitive damages claim. Appellant's Initial Brief at pp.20-21. This Court therefore should reverse the district court and grant Chasity's motion for partial summary judgment on liability for the denial of medical care claim and the punitive damages claim.

## VII.  Any Dispute of Material Fact Requires Reversal of the District Court.

Dr. Shaw asserts that – in the alternative – this Court could affirm the district court because "[t]here is more than enough evidence in the record to establish that, at a minimum, there is a material factual dispute that Dr. Shaw did not act with deliberate indifference and was entitled to qualified immunity." Appellee's Brief at pp.37-38. If this Court finds a dispute of material of fact pertaining to Dr. Shaw's deliberate indifference, then the district court's grant of summary judgment to Dr. Shaw should be reversed. *See* Fed. R. Civ. P. 56(a) (stating that summary judgment should be granted only if there is no genuine dispute of material fact).

## CONCLUSION

For the reasons set forth above, Chasity respectfully requests that this Court: (1) the reverse the district court's grant of summary judgment in favor of Dr. Shaw; (2) grant partial summary judgment in favor of Chasity on liability for the Fourteenth Amendment denial of medical care claim against Dr. Shaw; (3) grant partial summary judgment in favor of Chasity on liability for the punitive damages claim against Dr. Shaw; and (4) remand this case to the district court for further proceedings.

Respectfully submitted,

/s/ Jarrett Adams
Jarrett Adams, Esq.
LAW OFFICES OF JARRETT ADAMS, PLLC
40 Fulton St., Floor 15
New York, New York 10038
T: 646.880.9707
F: 646.880.9707
E: JAdams@JarrettAdamsLaw.com
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.      This document complies with the type-volume limit of FED. R. APP.

P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by FED.

R. APP. P. 32(f) this document contains 3,199 words.

2.      This document complies with the typeface requirements of FED. R.

APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word Version 16.101.2 in 14-point Times New Roman font.

Date: December 2, 2025

/s/ Jarrett Adams
Jarrett Adams, Esq.
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2025 I electronically filed the foregoing

pleading with the United States Court of Appeals for the Fifth Circuit using the

CM/ECF system, which will automatically serve a true and complete copy upon

the following counsel of record:

Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com

Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com

Katherine R. Hancock
State Nar No. 24106048
khancock@canteyhanger.com

Tiereney L. Bowman
State Bar No. 24136751
tbowman@canteyhanger.com

**Cantey Hanger LLP**
600 W. 6th Street, Suite 300
Fort Worth, Texas 76102
Tel. (817) 877-2800

*Attorneys for Defendant-Appellee*

/s/ Jarrett Adams
Jarrett Adams, Esq.
*Attorney for Plaintiff-Appellant*